# COMPOSITE EXHIBIT A

The Law Offices of
# Roderick V. Hannah, Esq., P.A.

4800 North Hiatus Road
Sunrise, FL 33351-7919

Telephone: (954) 362-3800
Facsimile: (954) 362-3779
Email: rhannah@rhannahlaw.com

May 28, 2026

**VIA PROCESS SERVER**
Madame Tussauds Orlando LLC
c/o CT Corporation System
as Registered Agent
1200 South Pine Island Road
Plantation, FL 33324

> **Re:**  *Filing of Charge of Public Disability Accommodation Discrimination*
> *and 30-Day Remediation Notice*
> *Nelson Fernandez v. Madame Tussauds Orlando LLC*

Dear Sir or Madam:

Please be advised that this firm and the Law Office of Pelayo Duran, P.A., as co-counsel, represent the interests of Nelson Fernandez, a visually and physically disabled individual, in connection with a charge of public accommodation disability discrimination that is in the process of being filed with the Florida Commission on Human Relations in advance of filing a civil action against Madame Tussauds Orlando LLC (the "Company"). The Charge Questionnaire, a courtesy copy of which is attached, specifically alleges that the Company's website, www.madametussauds.com (the "Website"), contains numerous access barriers to blind and visually disabled users and customers of the Company who use commercially available screen reading software to access and navigate company websites.

This correspondence is being sent for **three specific reasons**:

1)   To alert the Company of the eventual filing of the administrative Charge of Discrimination, which ultimately will seek the recovery of compensatory and punitive damages, declaratory and injunctive relief, attorney's fees, and costs;

2)   To provide the Company with **30-days' advance notice** to fully correct the access barriers described in the Charge and the accompanying expert's declaration and report, and thereby make the Website fully and equally accessible to the blind and visually disabled such as Mr. Fernandez; and

3) To make a good faith effort to reach an amicable resolution of Mr. Fernandez's pending claims against the Company as outlined in the attached Charge.

1

We hereby request that the Company be provided with this letter and the attached Charge Questionnaire, confirm in writing its receipt of this letter and the attached Charge Questionnaire, and contact the undersigned to the extent it is interested in negotiating an early, amicable resolution that would include the withdrawal of the pending Charge Questionnaire and any ensuing Charge of Discrimination with prejudice. In addition, the Company is hereby alerted to the following:

## REQUEST FOR APPLICABLE INSURANCE POLICIES

Pursuant to Florida Statute 627.4137, Mr. Fernandez hereby requests that the Company provide this firm, within no more than thirty (30) days of this written request, with: (a) a copy of any insurance policies that may cover for any liability, attorneys' fees or cost arising from or related to Mr. Fernandez's discrimination allegations as contained in the attached Charge of Discrimination; and (b) disclosure of (i) the name and address of each insured, (ii) the number of each insurance policy, (iii) the effective date of any policies, (iv) the limits of the liability, and (v) deductible amounts.

## PRESERVATION OF EVIDENCE, DOCUMENTATION, ELECTRONIC DATA, AND ELECTRONICALLY STORED INFORMATION

On behalf of our client, Mr. Fernandez, we hereby demand that the Company not destroy, discard, conceal, or alter any paper or electronic files and other data generated by and/or stored on their computers, social media, and storage media (e.g., hard disks, backup tapes, flash/thumb drives, cellular telephones etc.,) or any other electronic paper data that may be potentially relevant to any dispute between or among all the respective parties, including in particular such papers, documentation, data, and electronically stored information regarding the Website. All documents and things, whether paper or electronic, must be maintained until such time as the anticipated litigation is concluded. This obligation is imposed and exists without regard to any document retention policy which may otherwise be in place. This also applies to former employees who would have knowledge of the issues and whose documents and information are in your possession or control.

Examples of the types of documents that must be maintained include, without limitation, correspondence, e-mails, all social media, memoranda, drafts, notebooks, handwritten notes, financials information, spreadsheets, complaints, email communications, letters, holographs, videos, audio recordings, due diligence information, and any other materials.

Also, in identifying and preserving electronic data, please keep in mind that electronic data includes, but is not limited to, all text messages, emails, postings, social media posting or uploads, text, text files (including word processing documents and presentations), spreadsheets, e-mail (and attachments), databases, calendars, computer system activity logs, computer files, internet usage files, network access information, and information saved on any computer network, iPhone, iPads, Android, tablets, or other mobile devices, or found on any hard drives. Any computers systems include, but are not limited to, all workstations, laptops, network servers, removable media, handheld devices, and voicemail and backup tapes. **Any questions as to what should be preserved should be resolved in favor of preservation and retention.**

2

In particular, please preserve any and all digital evidence related to the Website at issue and under the Company's control and wherever located, including hidden system files or metadata, presently located on or contained in a free standing computer or laptop, or on any part of a server, CPU or digital device that may contain data storage capabilities including, but not limited to hard disk drives, optical disk drives, removable media, such as floppy disk drives, CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives or snap drives, data processing cards, computers magnetic tapes, backup tapes, drum and disk storage devices or any other similar electronic storage media or system of whatever name or description.

Please also preserve all digital image evidence that may be stored PDF on any type of hardware used to store or manipulate electronic images, including but not limited to microfilm, microfiche and their repositories and readers, or design or engineering computer systems and regardless of any digital image's format, including: .jpg, .bmp, or some other advanced or proprietary form of digital image format, such as CAD layered drawings type of hardware used to store or manipulate electronic images, including but not limited to PDF, microfilm, microfiche and their repositories and readers, or design or engineering computer systems and regardless of any digital image's format, including: .jpg, .bmp, or some other advanced or proprietary form of digital image format, such as CAD layered drawings. Including the imaging of hard drives, please take all reasonable steps to preserve digital evidence that may have been deleted from your active files, and which may not be readily recoverable from a backup medium, such as metadata.

The Company's obligation to preserve all documents, records, data, files, and electronically stored information potentially relevant to this dispute applies not only to documents, records, data, files, and electronically stored information currently in existence, but also to all such documents, records, data, files, and electronically store information created in the future. Accordingly, your clients must retain a copy of all potentially relevant and newly created or received documents, records, data, files, and electronically stored information related to the Website at issue.

Further, if the Company is aware of agents, third parties, employees, or former employees that it believes should receive this message because they may possess relevant files, documents or information concerning this dispute and the Website, please forward this preservation request to that person or entity, as appropriate.

Additionally, as to those individuals whose information is being requested to be preserved herein, please have disabled any "janitorial" functions, such as automatic deletion of e-mail after a certain number of days, or automatic recycling of networks. All information should then be preserved going forward and none should be destroyed. In case of doubt as to the relevance of a document or electronic file, please preserve it.

Finally, we hereby advise the Company of the consequences of its failure to preserve such documentation and information as requested herein, which could result in extreme sanctions, striking of pleadings, and/or an award of attorney's fees.

3

We look forward to receiving the Company's response to this letter and the attached Charge and in working with the Company to reach an amicable resolution in this matter without the need for costly, protracted litigation.  We also look forward to the Company fully and effectively remediating the Website within the thirty (30) days from your receipt of this letter to make it fully and equally accessible to the blind and visually disabled as it is to those users of the Website who have full vision.

**However, the Company is hereby advised that if the alleged access barriers on the Website are not fully remedied within thirty (30) days from the date of your receipt of this letter, be advised that Mr. Fernandez will proceed with taking all steps necessary to enforce his rights under the law, including filing suit under Title III of the Americans with Disabilities Act and the Florida Civil Rights Act, in Florida federal or state court.**

PLEASE GOVERN YOURSELF ACCORDINGLY.

Sincerely,

Roderick V. Hannah, Esq.
For the Firm

Enclosures:
- Charge Questionnaire for Public Disability Accommodation Discrimination
- Exhibit "A"

cc:    Pelayo M. Duran, Esq.

4



## FLORIDA COMMISSION ON HUMAN RELATIONS

### Technical Assistance Questionnaire for Public Accommodation Complaints

***Your answers to this questionnaire are confidential pursuant to Florida Statute 760.11(12).***

The primary purpose of this questionnaire is to solicit information about claims of discrimination, determine whether the Florida Commission on Human Relations (FCHR) has jurisdiction over those claims and provide charge filing counseling, as appropriate. Providing this information is voluntary, but the failure to do so may impede the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information. NOTE: The FCHR may disclose the information included on this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if the FCHR becomes aware of a civil or criminal law violation. If the FCHR accepts this form as a charge, this form will be provided to the organization identified.

### ✶✶✶✶✶✶✶✶✶✶✶✶✶



Please complete this entire form (please print) and return it to the Commission at the address listed at the bottom of this form. Answer all questions completely. Attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A."

REMEMBER, a charge of public accommodation discrimination must be filed within 365 days of the alleged act of discrimination.

## 1. Personal Information

Last Name: __Fernandez__    First Name: __Nelson__    MI: _____

Street or Mailing Address: 5241 Green Belt Drive ___ Apt or Unit #: _____

City: Haines City   County: _Polk___    State: _FL_   Zip: __33844__

Telephone Number: (305) 266-9780

Email address: pleadings@pelayoduran.com _____

Date of Birth: 01/30/66   Sex: X Male   ☐ Female

## 2. Contact Person (if we cannot reach you)

Name: The Law Office of Pelayo Duran, PA    Relationship: Attorney

Address: 6355 NW 36th St., Suite 307   City: Virginia Gardens   State: FL

Zip Code: 33166

Home Phone: (305) 266-9780    Other Phone: () _____

## 3. Organization / Business that discriminated against me

Organization Name:  MADAME TUSSAUDS ORLANDO LLC _____
Address:  8387 International Drive _____ County:  Orange County ____
City:  Orlando _____ State:  FL__ Zip:  ___32819  Phone: (855) 450-0581 __
Type of Business:  Foreign Limited Liability Company ___
Owner Name:  Merlin Entertainments Group ____ Phone:  +44 01372 751411 _

## 4. Organization Representative Contact Information (if known)

Representative Name:  CT Corporation System _____
Address:  1200 South Pine Island Road _____ County:  Broward _____
City:  Plantation _____ State:  FL _____ Zip:  33324 _____
Phone: Home () _____ Work (954)  473-5503 _____
Email: _____

2

## 5. Basis of Discrimination (Check all that apply)

☐ Race: ☐ Black ☐ White ☐ Asian ☐ Native Hawaiian/Pacific Islander ☐ American Indian or Alaska Native ☐ Color: ☐ Light Skinned ☐ Dark Skinned ☐ Other: _____ ☐ National Origin: ☐ Hispanic ☐ Mexican ☐ Arab/Middle Eastern ☐ East Indian ☐ Other: _____ ☐ Sex: ☐ Female ☐Male ☐ Pregnant or condition related to pregnancy or childbirth ☐ Religion (Please identify): _____ ☐ ☒Disability/Handicap: ☒Physical ☐ Mental ☐ Familial Status (Please identify): _____

## 6. What happened? (Describe in detail)

What happened to you that you believe was discriminatory? Include the date(s), the action(s), and the name(s) and title(s) of the person(s) who discriminated against you. Please attach additional pages if needed.

I have been diagnosed with Relapsing-Remitting Multiple Sclerosis and Optic Neuritis and I am physically and visually disabled. I use screen reader software and other auxiliary aids and assistance to access and navigate Internet websites. Respondent owns, operates, and/or controls, either directly or through franchise or licensing agreements, a chain of 24 museums, including the museum located in Orlando, Orange County, Florida, which I intend to patronize in the near future. Respondent operates as a place of public accommodation through its physical museums. Respondent also owns, controls, maintains, and/or operates an adjunct website, www.madametussauds.com (the "Website"). The Website provides visitors with information on Respondent's physical locations, acts as a point of sale for Respondent's network of physical museums, and allows users to purchase tickets and passes also available for purchase in the physical museums, purchase electronic and physical gift tickets for access to the physical museums, purchase electronic gift cards for use online and in the physical museums, and sign up for an emailer to receive exclusive offers, coupons, benefits, promotions, invitations, and discounts for use online and in the physical museums. The Website thus is a necessary extension of, gateway to, and service, privilege, and advantage provided by places of public accommodation, i.e., Respondent's physical museums. On or about April 22, 2026, I attempted on a number of occasions to utilize the Website to browse through the ticket and pass options and other available services, products, and other offers with the intent to make a purchase through the Website or in and from Respondent's Orlando museum. I encountered the following access barriers in trying to access and navigate the Website: (a) the menu can be confusing to use as the navigation has many sections, such as tickets, plan your visit, and attractions; thus a screen reader may read too many options at once, making it hard to follow; (b) buttons are not always clear and some buttons like "Buy Tickets" or menu icons may not clearly explain what they do when read aloud by a screen reader; (c) images do not always describe what is shown as the Website uses many photos of wax figures and exhibits, but these photos may not have

3

helpful descriptions so screen reader users miss important details; (d) pop-ups and booking tools can be hard to understand as ticket booking or help chat features may open without clear announcements that confuse screen reader users; (e) too much information on a single page as pages include lots of sections that can feel overwhelming when everything is read aloud by a screen reader; and (f) links are unclear as links like "Learn more" or "Click here" may not explain where they go, making navigation very difficult. I hired a forensic expert, Robert Moody, who confirmed the access barriers I encountered as well as additional barriers as set forth in his Declaration attached as Exhibit "A." The access barriers on the Website are continuing and ongoing and prevent me, as well as other blind and visually disabled persons, from equally and fully accessing the goods, services, privileges, and advantages that Respondent has made available to the non-visually disabled public both on the Website and through its Orlando physical museum. I plan to return to and use Defendant's Website and to also patronize Respondent's Orlando Museum as early as both June or July 2026, for the purposes of reviewing Defendant's available products and pricing and purchasing Defendant's tickets, passes, and gift cards, through and from the physical museum. I thus believe I have been discriminated against, and continue to be discriminated against, by Respondent because of my visual disability in violation of Florida Statute Section 760.

(Continue on additional pages if necessary)

---

**7. Disability** (Only answer if your claim is based on disability)

Do you have a disability which substantially limits a major life activity?

☒ Yes, I have a disability. ☐ I do not have a disability now but I did have one. ☐ No disability, but the organization treats me as if I am disabled.

---

**8.** Have you filed this charge previously with another agency? ☐ Yes   ☒ No If yes:
Agency: _____   Date: _____

**9.** Have you sought help from a union, attorney, or any other source? ☒ Yes   ☐ No If yes, provide details:

Law Office of Pelayo Duran, P.A.
6355 NW 36 Street Suite 307
Virginia Gardens, Florida 33166
Tel. (305) 266-9780
Fax (305) 269-8311
Email: Pleadings@pelayoduran.com

4

Roderick V. Hannah, Esq., P.A.
4800 N. Hiatus Road
Sunrise, FL   33351
Tel. (954) 362-3800
Fax (954) 362-3779
Email: rhannah@rhannahlaw.com

---

**10.** How did you learn about the Florida Commission on Human Relations?

☐ Commission website   ☐ Other website   ☐ Poster/billboard   ☐ Friend/family
☒ Attorney ☐ Already familiar with   ☐ Other: _____

**11.** Date of Harm: _April 22, 2026_

---

**Mail or FAX to:** Florida Commission on Human Relations

Florida Commission on Human Relations
4075 Esplanade Way, Suite 110
Tallahassee, Florida 32399-7020
Telephone: (850) 488-7082
Facsimile: (850) 487-1007

5

# EXHIBIT "A"

NELSON FERNANDEZ,

       Plaintiff,

v.

MADAME TUSSAUDS ORLANDO,

       Defendant.

_____ /

## EXPERT REPORT AND DECLARATION OF:

### <u>ROBERT D. MOODY</u>

I, Robert D. Moody, declare that I have read the following instrument, and the facts and information stated in it are true and correct to the best of my knowledge. I am personally acquainted with the facts stated herein.

1.  I am the President, CEO, and Founder of Forensic Data Services, Inc. (d/b/a FDS Global) (hereafter referred to as FDS) based in Broward County, Florida.

2.  My company was retained by the law firms of Roderick V. Hannah, Esq. and Pelayo Duran, Esq. counsel for the Plaintiff(s), Nelson Fernandez.

3.  The Plaintiff has established that he is visually impaired and asserts his rights under the Americans with Disability Act (ADA).

4.  I have been retained to provide consulting services, including ADA auditing, which includes compliance, usability, and accessibility standards (WCAG 2.0/2.1), as well as general functionality analysis for disabled users.

5.  My duties with FDS include being the principal investigator and testifying expert.

6.  I am certified in Information Systems Auditing, Information Security, and Computer Forensics. Additionally, I have received training relating to my work in this matter and provided my CV to fully describe my education, certification, training, and testifying background. My CV is attached as **Exhibit 1**.

7.  My current contract provides that my rates are $450 per hour for technical work and $750 per hour for testimony.

8.  Specific to websites and their functionality, I have experience in the auditing, testing, and operability of the website and its content.

9.  My work has identified websites that were both WCAG-compliant and non-compliant with WCAG.

10. In the present matter, FDS, with me as the principal investigator, was retained by Plaintiff's counsel on behalf of Plaintiff, a visually impaired user of the internet, to determine whether the Defendant's website had issues that could not be overcome and acted as barriers to the Plaintiff.

11. The process followed by FDS and me, as the principal investigator of this website, includes the following:

   a. Identify the issues encountered by the Plaintiff and examine the website, through a manual review, for the existence of these issues.

   b. Complete the manual review started in paragraph (a) to determine if other issues exist with the Defendant's website that would not be ADA compliance or in line with WCAG 2.0/2.1.

   c. Automated testing of Defendant's website, thus identifying errors or issues that would serve as barriers for disabled users.

   d. Hybrid testing that integrates an automated platform, a manual or guided process, and artificial intelligence.

12. All testing performed on Defendant's website uses Google Chrome Browser, Version 128.0.6613.138, Microsoft Narrator, and Deque Axe Pro. If an accessibility widget exists on the website, it is engaged, and where possible, specific widget features are turned on during testing.

13. The Plaintiff, in his review of the Defendant's website, identified the following:

   a. Menu can be confusing to use. The navigation has many sections like tickets, plan your visit, attractions, and a screen reader may read too many options at once, making it hard to follow.

   b. Buttons are not always clear. Some buttons like "Buy Tickets" or menu icons may not clearly explain what they do when read aloud.

   c. Images do not always describe what is shown. The site uses lots of photos of wax figures and exhibits, but these may not have helpful descriptions, so users miss important details.

   d. Pop-ups and booking tools can be hard to understand. Ticket booking or help chat features may open without clear announcements, which can confuse screen reader users.

   e. Too much information on one page. Pages include lots of sections like tickets, FAQs, promotions, which can feel overwhelming when everything is read aloud.

   f. Links can be unclear. Links like "Learn more" or "Click here" may not explain where they go, making navigation harder.

14. A manual review of the Defendant's website shows that the following issues were present:

   a. Menu can be confusing to use. The navigation has many sections like tickets, plan your visit, attractions, and a screen reader may read too many options at once, making it hard to follow.

   b. Buttons are not always clear. Some buttons like "Buy Tickets" or menu icons may not clearly explain what they do when read aloud.

c.  Images do not always describe what is shown. The site uses lots of photos of wax figures and exhibits, but these may not have helpful descriptions, so users miss important details.

d.  Pop-ups and booking tools can be hard to understand. Ticket booking or help chat features may open without clear announcements, which can confuse screen reader users.

e.  Too much information on one page. Pages include lots of sections like tickets, FAQs, promotions, which can feel overwhelming when everything is read aloud.

f.  Links can be unclear. Links like "Learn more" or "Click here" may not explain where they go, making navigation harder.

15. The automated testing of the Defendant's website, https://www.madametussauds.com/orlando/, identified the following issues:

a.  Buttons must have discernible text

b.  Landmarks should have a unique role or role, label, title combination

c.  ARIA role should be appropriate for the element

d.  ARIA attributes must conform to valid values

e.  Elements must meet minimum color contrast ratio thresholds

f.  Hidden content on the page should be analyzed

g.  Links must be distinguishable without relying on color

h.  Video elements must have captions

i.  Hidden or empty element received focus

j.  Function cannot be performed by keyboard alone

k.  The decorative image is not hidden from screen readers

16. The issues identified during the automated testing were found throughout the website.

17. Hybrid testing combines manual review and automated processes and integrates Artificial Intelligence. This suite of tools identifies specific issues and produces a scorecard dividing them into six distinct categories.

18. In the present case, the scorecard identified **116 issues** and categorized them as follows:

| | | | | | |
|---|---|---|---|---|---|
| 5 | 2 | 11 | 0 | 0 | 98 |

19. To better understand the categories provided above, the following descriptions are provided:

a.  **Critical** - This issue results in blocked content for people with disabilities and will partially prevent them from accessing fundamental features or content. This type of issue puts your organization at risk.

b. **Serious** - This issue creates barriers for people with disabilities and partially prevents them from accessing fundamental features or content. As a result, people relying on assistive technologies will experience significant frustration.

c. **Moderate** - This issue creates barriers for people with disabilities but will prevent them from accessing fundamental features or content.

d. **Color Contrast** - This issue results from an organization not ensuring a proper ratio between the foreground and background of text and pictures. The correct ratio must be 4.5:1 for standard text and 3:1 for large text. Failure to meet this standard creates barriers for disabled users, especially visually impaired users.

e. **Other** - This issue identifies issues based on what has been determined as a best practice. When taken into account along with items a. through d., a minor problem could be elevated to a critical or severe barrier.

20. The issues listed above and referenced by the scorecard **(116 issues)** identify barriers that would prevent a disabled person from using and enjoying the Defendant's website.

21. The examples provided above specifically identify design elements that do not comply with WCAG and point to issues that would directly impact Plaintiff's ability to use, research, and order the goods and services provided by Defendant.

22. To conclude, given all of the above and considering the issues identified, I can say with a high degree of scientific certainty that the website https://www.madametussauds.com/orlando/ has barriers that create problems for visually disabled persons and have a direct and immediate effective use and enjoyment of the site for persons with low to no vision. Furthermore, as found on the Defendant's website, these defects do not comply with WCAG 2.0/2.1.

23. I reserve the right to update, alter, change, delete, and supplement this declaration in the alternative file if provided with additional relevant material.

**DECLARANT FURTHER SAYETH NOT.**

Under penalty of perjury, I affirm that the preceding statements are true and correct.

*Robert D. Moody*

**Robert D. Moody**
rmoody@fds.global

Date: 05/05/2026